UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RECO N. SIMMONS,

        Petitioner,                    Case No. 2:18-cv-11984
                                              Hon. George Caram Steeh

    v.

ERICA HUSS,

        Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Reco N. Simmons, ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, armed robbery, MICH. COMP. LAWS § 750.529, first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to a term of 450 months to 80 years for the murder conviction to be served consecutively to a term of 140 months to 20 years for the home invasion conviction and a 2-year term for the firearm conviction. Petitioner was sentenced to a concurrent term of 285 months to 50 years for the armed robbery conviction.

The petition raises one claim: Petitioner was denied the effective assistance of counsel when his trial attorney conceded during closing argument that Petitioner was guilty of second-degree murder. The Court will deny the petition because the Michigan Court of Appeals reasonably rejected the claim on the merits during Petitioner's direct appeal. The Court will also deny Petitioner a certificate of appealability, but it will grant permission to appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On August 8, 2012, Michael Montgomery (Montgomery) concocted a plan to rob the home of Melissa Villneff (Melissa). He enlisted the help of Reco and Aquire. These two sought out four additional men to help: Fredrick, Michael Evans (Evans), Felando Hunter (Felando), and Brandon Crawford (Brandon). That evening, Evans drove the group in his Explorer to Melissa's home. When the group first arrived, they noticed a group of young children playing outside, and decided against going forward with their plan at that time. But a short time later, armed with an SK assault rifle, revolvers, and a baseball bat, the men executed their plan.

> Evans stayed behind as the getaway driver. Montgomery, who knew that Patrick Villneff was at the house, lured him away by going for a walk with him and Patrick's dog. Fredrick, Felando, Reco, and Aquire entered the house. Apparently to

their surprise, Terrance Villneff (Terrance) was inside, playing a video game. One of the men struck him in the face. Armed with the rifle, Felando ordered Terrance to a bedroom in the back of the house. There, Aquire beat him with the baseball bat at Felando's direction. The other men searched the home. Eventually, the men left. But as they did, they noticed that Melissa's father and next-door neighbor, John Villneff, was standing on his porch and calling 911. John had been alerted to the robbery by one of the children, who had seen the men enter Melissa's home. Reco fired a few shots from his revolver toward John, and Felando fired several more with the assault rifle. John was struck by one of these bullets and died shortly after.

*People v. Simmons*, 2016 WL 1039553, at *1 (Mich. Ct. App. Mar. 14, 2016).

Following his conviction Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised one claim:

> I. Mr. Simmons was denied his constitutionally guaranteed rights to the effective assistance of counsel under the Sixth Amendment and Const. 1963, art. 1, § 20, where counsel— without notice to Mr. Simmons—expressly admitted guilt.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the question presented should be reviewed. *People v. Simmons*, 891 N.W.2d 865 (Mich. 2017) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

Petitioner asserts that he was denied the effective assistance of counsel when his trial attorney conceded during closing argument that he was guilty of the lesser offense of second-degree murder. Respondent asserts that habeas relief is not warranted because the Michigan Court of Appeals reasonably found that counsel's argument was not deficient in light of the strong evidence of Petitioner's guilt. Respondent notes that counsel's strategy worked, and Petitioner was found guilty of the lesser offense

despite compelling evidence that he was guilty of first-degree felony

murder.

After reciting the controlling established Supreme Court standard, the

Michigan Court of Appeals rejected this claim on the merits as follows:

> At trial, substantial evidence of Reco's involvement in the crimes was presented. This evidence included multiple witnesses who testified that Felando told Demerious Cunningham (Demerious) that Reco shot John, as well as Reco's statement to his aunt, in which Reco admitted firing at John. Recognizing that this evidence would likely result in a murder conviction, defense counsel argued in closing that "the verdict in this case is guilty. But the question is guilty of what? Is it first degree-excuse me. First degree felony murder? Is it second degree?"

> Reco now argues that by admitting guilt, trial counsel was ineffective. As the United States Supreme Court has recognized, in cases where a client's guilt is clear, such a strategy may well be reasonable. See *Florida v. Nixon*, 543 U.S. 175 (2004) (recognizing that it may well be a reasonable trial strategy to admit guilt to a lesser offense in an attempt to avoid the potential consequences of a finding of guilt of a higher offense). Given the evidence admitted at trial, which overwhelmingly demonstrated that Reco was a participant in a robbery during which a victim was shot and killed, and moreover, that Reco was likely the shooter, pleading for leniency in the form of a sentence of second-degree murder was a reasonable strategy. It was also successful. Despite strong evidence that Reco was guilty of first-degree murder, the jury convicted him only of second-degree murder, thereby allowing Reco to avoid the mandatory sentence of life imprisonment without parole that would attach to a first-degree murder conviction. MICH. COMP. LAWS § 750.316(1) ("[A] person who commits . . . first degree murder [] shall be punished by imprisonment for life without eligibility for parole[.]"). We will "not second-guess counsel's trial tactic of admitting guilt of a lesser

offense." *People v. Emerson (On Remand)*, 203 Mich. App. 345, 349 (1994).

Reco also argues that counsel was ineffective for failing to consult with Reco before committing to this strategy. The existing record, however, does not disclose whether counsel did or did not discuss this strategy with Reco. While Reco expressed his dissatisfaction with counsel's closing argument to the trial court, he did not clearly state that counsel proceeded without Reco's knowledge. Further, the trial court's comments, with which Reco agreed, indicated he had spoken with counsel regarding the strong likelihood that he would be convicted, which was the very reason counsel adopted the strategy. And despite the trial court suggesting that an evidentiary hearing would be necessary to resolve the issue, Reco never sought an evidentiary hearing. Thus, counsel was never given the opportunity to explain whether he discussed this strategy with Reco, and the trial court was never given the opportunity to resolve the question. Because the existing record does not support Reco's claim of ineffective assistance of counsel, he has effectively waived the challenge. *Id.* We note that Reco does not ask this Court to remand for an evidentiary hearing to resolve the issue. In fact, he takes the opposite position, stating that "an additional determination in the lower court is not needed for review."

*Simmons*, 2016 WL 1039553, at *3-4 (footnote citations inserted into body).

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The record shows that rather than seek an outright acquittal, Petitioner's trial counsel suggested that he was not guilty of first-degree murder and should only be found guilty of second-degree murder:

> [Petitioner] does say [to his aunt] yes, I shot at somebody. There were other people shot or something about three other people in the bushes and my brother was going to be shot by somebody over there and everything. But the short of it is, ladies and gentlemen, is he shot somebody. Did he intend to kill anybody? He had an old gun, that's what somebody said, a rustic, old gun. And I guess if we go by what the prosecutor says, it was a good shot.
>
> If we also go by what the prosecutor said, there was another person with an AK-47 that could have shot and killed this man.
>
> \*    \*    \*
>
> We're not denying that-what happened. But did my client intend to hurt or kill anybody? Was that the plan? . . . My client told his aunt he was remorseful, he was sad, he wasn't happy about what happened. He didn't mean to do it.

Now what does that have to do with it? The prosecution says yes, ladies and gentlemen, see he's admitting that he shot somebody. Yes, ladies and gentlemen, my client did. He told you. Excuse me, he told his aunt. He told other people about what happened.

What you're going to have to decide is what should be the verdict as to my client. My client has never stood up here and was saying I'm innocent of anything. He knows that something did-that you will render a guilty verdict. The question is guilty of what?

In conclusion, ladies and gentlemen, the verdict in this case is guilty. But the question is guilty of what? Is it first degree-excuse me. First degree felony murder? Is it second degree? The Judge is going to read you all the law. The prosecution has already reviewed some of the law that applies to this case.

\*     \*     \*

It is your decision, ladies and gentlemen, as I indicated at the beginning of this case, to render a just verdict for my client.

Dkt. 9-12, at 135-36, 138-39.

Established Supreme Court law recognizes that there are circumstances when such an argument conceding a defendant's guilt to a lesser charge does not amount to deficient performance under *Strickland. Florida v. Nixon*, 543 U.S. 175, 187-88 (2004) (citations omitted). By candidly acknowledging the strength of the prosecutor's case, an attorney can build credibility with the jury and possibly persuade the jury to focus on other factors important to the defendant. *Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (per curiam). An attorney "cannot be deemed ineffective for

attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'" *Nixon*, 543 U.S. at 192 (citing *United States v. Cronic*, 466 U.S. 648, 656 n. 19 (1984)). Therefore, "[a] defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel." *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (Gadola, J.) (citing *Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)); see also, *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender.").

As the Michigan Court of Appeals reasonably found in this case, the evidence presented at trial very strongly indicated that Petitioner was guilty of first-degree felony murder. The victim's family knew Michael Montgomery, the man who arranged the robbery, and therefore identification of the group of perpetrators was not difficult for the prosecution to prove. Several of the perpetrators testified for the

prosecution, and while often such testimony might be challenged as blame-shifting, here the testimony describing the crime was corroborated by the surviving victim, the granddaughter of the deceased victim, and the physical evidence. Finally, Petitioner admitted his guilt to his aunt, and neither at trial nor even in this action has Petitioner suggested a basis on which her testimony could have been effectively challenged. The mutually corroborating testimony of the prosecution witnesses therefore strongly indicated that Petitioner was guilty of first-degree felony murder, as he participated in a murder that was committed during the course of a home-invasion and armed robbery.

The fact that the jury found Petitioner guilty of the predicate felonies for the first-degree felony murder charge but then only convicted him of second-degree murder indicates that trial counsel's plea for leniency worked. It also suggests that if counsel had argued for an outright acquittal, then Petitioner very well may have been convicted of the more serious charge. Given the deference afforded to counsel's strategic decisions by the *Strickland* standard and the fact that clearly established law recognizes at least as a general principal that counsel may concede guilt to a lesser offense, the state adjudication of Petitioner's claim was reasonable.

Petitioner asserts that even if an attorney may in some cases concede guilt to a lesser offense, such a concession requires consent, and he was never informed of his counsel's planned strategy. Petitioner voiced an objection to the concession following closing argument. Dkt. 9-12, at 172. And on the next trial date, the court indicated that an appellate attorney would be appointed to consult with Petitioner regarding a possible claim of ineffective assistance of counsel. Dkt. 9-13, at 3-4.

In *McCoy v. Louisiana*, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018), a criminal defendant's counsel conceded guilt during the guilt phase of a capital trial. When the Supreme Court reviewed the claim that counsel's argument denied him the right to the effective assistance of counsel, it concluded that *Strickland* did not apply because the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *Id.* at 1505. The Supreme Court explained that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt" is in the defendant's best interest.

Petitioner cannot rely on *McCoy* to support his claim. First, a state court decision cannot be challenged under § 2254(d) based on Supreme Court decisions not on the books at "the time the state court render[ed] its

decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotations and emphasis omitted); see also Cullen v. Pinholster, 563 U.S. 170, 182 (2011) ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision." (quotations omitted)). *McCoy* was decided after the Michigan Court of Appeals adjudicated Petitioner's claim.

Next, and despite Petitioner's objection following closing argument, the Michigan Court of Appeals found, "the existing record . . . does not disclose whether counsel did or did not discuss this strategy with [Petitioner]." *Simmons*, 2016 WL 1039553, at *4. This finding distinguishes Petitioner's case from *McCoy*. In *McCoy*, the defendant "opposed [his counsel's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court. *Id.*, 138 S. Ct. at 1504. Petitioner might have sought an evidentiary hearing during his direct appeal to further develop the record, but he chose not to. Habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. *Cullen* precludes this Court from considering any new evidence that counsel's concession was made without Petitioner's notice or despite his opposition "at every opportunity."

The state adjudication of Petitioner's ineffective assistance of counsel claim was reasonable. Petitioner has therefore failed to demonstrate entitlement to relief with respect to this claim.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

The Court finds that reasonable jurists would not debate the resolution of Petitioner's claims because it is devoid of merit. The Court will therefore deny a certificate of appealability.

If Petitioner chooses to appeal the Court's decision, he may proceed in forma pauperis because an appeal of this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for

a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3)

**GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: April 18, 2019

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 18, 2019, by electronic and/or ordinary mail and also on
Reco N. Simmons #729615, Marquette Branch Prison,
1960 U.S. Hwy 41 South, Marquette, MI 49855.

<u>s/Barbara Radke</u>
Deputy Clerk